[Civ. No. 4885.    Second Appellate District, Division Two.—June 24, 1925.]

## FRANK E. FARMER, Appellant, v. D. BARNES, Respondent.

[1] MORTGAGES—ACTION TO HAVE GRANT DEED DECREED A MORTGAGE—PRIMA FACIE CASE—NONSUIT.—In this action commenced for the purpose of having a grant deed decreed to be a mortgage, the evidence introduced by plaintiff having shown that the entire chain of transactions originated in an application for a loan, followed by an actual agreement that the loan would be made, that plaintiff agreed to buy the property back for the sum advanced, an allowance having been made for interest at the time of the advance and a "bonus" having been provided for in case of "repurchase," and that at the time of the execution of the deed the property was worth from one-sixth to one-fourth more than the sum advanced and had a higher prospective value, plaintiff's *prima facie* case was complete and the trial court erroneously ordered a nonsuit.

[2] ID.—CONFLICTING EVIDENCE—NONSUIT.—In such an action, notwithstanding conflicting evidence in the record, opposing evidence may not be weighed on motion for a nonsuit.

(1) 41 C. J., p. 354, n. 62.    (2) 38 Cyc., p. 1551, n. 62.

APPEAL from a judgment of the Superior Court of Los Angeles County.    Paul Burks, Judge.    Reversed.

The facts are stated in the opinion of the court.

Loucks & Phister for Appellant.

Irving S. Baltimore for Respondent.

WORKS, J.—This action was commenced for the purpose of having a grant deed decreed to be a mortgage. At the conclusion of plaintiff's evidence the trial court ordered a nonsuit, apparently on the ground that there was no evidence from which the court could find that the deed was intended by the parties as a mortgage, and judgment went accordingly.    Plaintiff appeals.

1. See 9 Cal. Jur. 558.

**[1]** There was evidence tending to prove the following facts: Appellant owned, or had an agreement under which he could acquire certain real property. Respondent, acting as the agent of one Alice M. Flood, although there was evidence that he also was the agent of appellant, brought the latter and Mrs. Flood together on paper. As a result of respondent's activity, a lease, signed by both the principals, was executed, whereby appellant demised to Mrs. Flood his real property for a term, to commence thirty days after the completion of a hotel which he contracted, as a part of the agreement of lease, to erect upon the premises. It was necessary for appellant to borrow money with which to construct the hotel, and following the execution of the lease, Mrs. Flood entered into an agreement to lend him $12,000 for that purpose, payment of the amount to be secured by a trust deed on appellant's property. This agreement was evidenced by certain escrow instructions, signed by both Mrs. Flood and appellant, which were lodged with the title company already mentioned. These instructions were dated May 11, 1923, but were apparently not deposited with the title company until about June 1. At any rate, certain papers called for by the instructions were dated on that day. Mrs. Flood never placed the $12,000 in the custody of the title company, as contemplated by the escrow instructions. Appellant testified that a ''grant deed was demanded in place of this trust deed''; that it was demanded by ''D. Barnes, for Mrs. Flood''; and that the demand was made in a conversation which occurred ''along about July.'' Appellant testified further: ''Q. State just the conversation you had as nearly as you can. A. Well, Mr. Barnes said 'We don't want to have the expense of foreclosure and we will take a grant deed, placed with the title company.' I needed the $12,000 and I submitted to the grant deed and placed it with the title company for Mrs. Flood and Mr. Barnes. . . . Q. Now exactly what had Mr. Barnes told you respecting this grant deed? A. That he would not consider taking the trust deed; he would have to have the grant deed. Q. Why did he say he wanted a grant deed? A. On account of foreclosure proceedings, the expense of foreclosure proceedings in case I could not pay. Q. He wanted title to the property? A. In case he had to foreclose— Q. At the end of ninety days? A. At the end of ninety

days if I could not pay. . . . Q. In this conversation . . . was there anything said about the time in which you were to pay this money back? A. Yes, it was to be about ninety days; October 5th, that was the date as I remember it; because I had in mind that I must raise the money by October 5th. Q. Was there anything said about interest at that time? A. I allowed him for interest; in the conversation we just made it a full two per cent on top of the $12,000.00, or $240; that was deducted from the $12,000 and I only received $11,760 into the title company; and that was disbursed to parties whom I owed . . . that was considered interest . . . for ninety days; and a bonus was to be paid him of a hundred dollars in case I gave him the $12,000.00 back for Mrs. Flood, the hundred dollars was to be for Mr. Barnes, and the $12,000.00 for Mrs. Flood, as I understood it. However, Mr. Barnes—I signed the deed in Mr. Barnes' name.'' Following this conversation, although appellant ran into it matters which occurred later, the deed was placed in escrow with the title company, which still held the escrow instructions of date May 11th between appellant and Mrs. Flood. The deed was from appellant, as grantor, to respondent, as grantee, and was dated July 5, 1923. Under the same date appellant signed and delivered to the title company a paper which, omitting the description of the real property described in the deed, was as follows: ''D. Barnes: I, the undersigned, hereby agree and promise to buy of you [the real property in question] for the sum of ($12,100.00) Twelve Thousand One Hundred Dollars all cash on or before October 5th, 1923, without interest.'' The title company having received the $11,760, the deed was delivered to respondent. The latter was called as a witness under section 2055 of the Code of Civil Procedure. He testified, in part, after referring to the original escrow between Mrs. Flood and appellant: ''Q. But she did not put up any $12,000.00? A. No, she refused to make the loan. Q. And some two months subsequent to that time you put $12,000 in there? A. In a different transaction. Q. Was it in the same escrow? A. The same escrow. Q. You had carried on all negotiations for Mrs. Flood? A. Yes, sir. Q. She had never been present at any time? A. No; I had been transacting her business.'' A real estate broker testified that appellant's property was worth

$14,000 or $15,000 on July 5, 1923. The lease between appellant and Mrs. Flood does not show what was to have been the cost of the hotel to be erected upon the property, but it was recited that it was to "be built of brick containing about one hundred (100) guest rooms, lobby, two stores and basement, and automatic elevator."

It is too plain for argument that this evidence made a strong *prima facie* case for appellant. If the grant deed had run to Mrs. Flood instead of to respondent and if there had been no evidence other than that which we have recited, the court could have made no finding but that the instrument was a mortgage. We cannot see that the making of the deed to respondent, coupled with the fact that the transaction which resulted in its execution may have been one between him and appellant—and respondent now claims that to have been the case—can make any material difference. If we take this claim of respondent as a factor to be considered, as he is the sole defendant in the cause—although some of the testimony of appellant indicates that Barnes was acting for Mrs. Flood to the end—and meet respondent on his own ground, it would appear still that there was a strong *prima facie* case under the complaint. It is not difficult to perceive a showing under the evidence that respondent, having conducted all the negotiations for Mrs. Flood, stepped into her place at last and made the loan with the grant deed as security instead of the trust deed originally contemplated. He knew that appellant wanted to *borrow* a certain sum on his property and he paid to appellant practically that amount. His intervention in the last analysis as a principal, if we meet him on his own claim that he did so intervene, seems not to affect the substantial merit of appellant's cause under the evidence adduced by him.

We apparently have here, under the evidence above stated, a typical case of the execution of a deed with the intention of both parties that it should operate as a mortgage. The entire chain of transactions originated in an application for a loan, followed by an actual agreement that the loan would be made; appellant agreed to buy the property back for the sum advanced, an allowance having been made for interest at the time of the advance and a "bonus" having been provided for in case of "repurchase"; and at

the time of the execution of the deed the property was worth from one-sixth to one-fourth more than the sum advanced and had a higher prospective value. Under these circumstances appellant's *prima facie* case was complete (*Holmes* v. *Grant,* 8 Paige (N. Y.), 258; *Turner* v. *Wilkinson,* 72 Ala. 519 [8 South. 352]). In fact, the case was so perfect under the general and well understood principles affecting the subject that the citation of authority is a work of supererogation. [2] We are unable to understand the conclusion reached by the trial court, except upon the theory that, there having been conflicting evidence in the record, the court adopted the view that opposing evidence may be weighed on motion for a nonsuit. Such a view was, of course, erroneous (*Estate of Arnold,* 147 Cal. 583 [82 Pac. 252]; *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335 [208 Pac. 125]).

Judgment reversed.

Finlayson, P. J., and Craig, J., concurred.